O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON L., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 5:23-cv-02234-SP <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION

On October 30, 2023, plaintiff Jason L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial for an application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issue in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") erred at step five. Plaintiff's Memorandum in Support of the Complaint

("P. Mem.") at 5-12; *see* Defendant's Opposition to Plaintiff's Memorandum in Support of Complaint ("D. Mem.") at 4-9.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detained herein, the ALJ committed some error at step five, but the errors were ultimately harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 37 years old on his alleged disability onset date, June 4, 2014. AR at 99. He completed one year of college and has past relevant experience as a support analyst, among other things. AR at 376, 1339.

On August 12, 2015, plaintiff filed an application for a period of disability and DIB due to hypertension, a neurological disorder, syncopal episodes, and fibromyalgia. AR at 99. The Commissioner denied plaintiff's application initially and upon reconsideration, after which plaintiff filed a request for a hearing. AR at 99-107, 109-17, 158-59.

On September 19, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Peter Valentino. AR at 38-72. The ALJ also heard testimony from Dr. Jack Lebeau, a medical expert, and Timara Tihan, a vocational expert ("VE"). AR at 56-72. On March 12, 2018, the ALJ denied plaintiff's claim for benefits. AR at 122-132. Plaintiff appealed the denial to the Appeals Council, which remanded plaintiff's case to the ALJ on October 10, 2019. AR at 138-43, 226-27.

On September 14, 2020, plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Marti Kirby. AR at 74-97. The ALJ also heard testimony from Luis Mas, a VE. AR at 88-96. On October 15, 2020, the ALJ denied plaintiff's claim for benefits. AR at 15-28. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. Plaintiff then filed a complaint in this court on April

21, 2021. AR at 1418-20. The parties stipulated to a remand to the Commissioner, which this court granted on November 10, 2021. AR at 1428.

On June 7, 2023, plaintiff, represented by counsel, again appeared and testified at a hearing before ALJ Kirby. AR at 1321-71. The ALJ also heard testimony from Linda Tolley, a VE. AR at 1359-1469. On August 30, 2023, the ALJ again denied plaintiff's claim for benefits. AR at 1293-1309.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 4, 2014 through his date last insured, March 31, 2019. AR at 1295.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine; rotator cuff syndrome of the shoulder and allied disorder; osteoarthrosis of the right shoulder; pseudo seizures; anxiety; depression; mild cognitive impairment; a conversion disorder; chronic pain syndrome; and cannabis dependence. AR at 1296.

At step three, the ALJ found plaintiff's impairments whether individually or in combination did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 1297.

The ALJ then assessed plaintiff's residual function capacity ("RFC"), and determined plaintiff had the RFC to perform light work with the limitations that plaintiff could: lift, carry, push, and pull up to 20 pound occasionally and up to 10 pounds frequently; stand for a total of three hours in an eight-hour work day for one hour at a time, walk for a total of two hours in an eight-hour workday for one hour at a time, and sit for a total of six hours in an eight-hour workday for two hours at time; frequently reach with the right upper extremity; perform frequent fine and gross manipulations bilaterally; frequently reach overhead or lift bilaterally; not climb or use ladders, ropes, or scaffolds; and not perform rapid or fast paced production where the use of his hands would be constant, including no assembly-line type work. AR at 1299. The ALJ also found plaintiff could: understand, remember, and carry out simple, routine tasks for up to

two-hour periods of time; and occasionally perform detailed but not complex tasks; and occasionally interact with the general public. *Id.* Finally, the ALJ determined plaintiff's work should be object-oriented rather than focused on customer service, with no work requiring teamwork, and he could not work in large groups of people such as in airports, hospitals, malls, concert arenas, or sporting events. AR at 1299-1300.

The ALJ found, at step four, that plaintiff was unable to perform any past relevant work. AR at 1307.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including marker, small products assembler, and document preparer. AR at 1308-09. Consequently, the ALJ determined that during the relevant period plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 1309.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether

4

substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks and citation omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks and citation omitted).

## IV.
## DISCUSSION

Plaintiff argues the ALJ's step five findings are unsupported by substantial evidence. P. Mem. at 6. In particular, plaintiff argues the ALJ's determination that plaintiff could perform the jobs of marker, small products assembler, and document preparer is erroneous because the jobs are either inconsistent with plaintiff's RFC or have been rendered obsolete. *Id.* at 5-12.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1512. The Commissioner may satisfy this burden through the testimony of a vocational expert. *Lounsburry*, 468 F.3d at 1114.

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d

1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

Here, the ALJ gave the VE a hypothetical of a person with essentially the RFC the ALJ ultimately found plaintiff to have. AR at 1360; *see* AR at 1299-1300. The VE testified such a person could perform the jobs of marker, small products assembler I, and document preparer. AR at 1361-64. The ALJ asked the VE whether her testimony was consistent with the DOT, and the VE affirmed it was except where noted, and explained that for anything not specifically addressed in the DOT she based her testimony on her experience in the field. AR at 1365-66.

**Small Products Assembler**

At step five, the ALJ determined plaintiff could work as an "assembler, small parts, [DOT] 739.687-030" based on his RFC. AR at 1308. The ALJ further noted the job basis would be eroded by approximately 50% due to plaintiff's handling and fingering restrictions, leaving approximately 35,000 jobs in the national economy. AR at 1309. Plaintiff argues the job requirements of a small products assembler, DOT 739.687-030 – which is the code for small products assembler II – conflict with his RFC as determined by the ALJ. P. Mem. at 6-8. Defendant responds that the ALJ essentially made a scrivener's error, having intended to find plaintiff could perform the job of small products assembler I, DOT 706.684-022, in her opinion, which is consistent with plaintiff's RFC. D. Mem. at 7-8.

In her decision, the ALJ does not specify by name whether she is referring to small products assembler I or II, but she does specify DOT 739.687-030, the code for small products assembler II. AR at 1308. Per the DOT, the small products assembler II position requires constant fingering and handling. DOT 739.687-030. An activity is

6

defined as constant if an employee must perform the action for two-thirds or more of their workday. *Navarro v. Berryhill*, 2017 WL 3131963, at *5 (C.D. Cal. July 24, 2017) (citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, app. C). But plaintiff's RFC prohibits him from occupations that require constant use of the hands, and limit him to frequent gross and fine manipulations. AR at 1299. A frequent activity is one performed between one-third and two-thirds of the workday. *Navarro*, 2017 WL 3131963, at *5. Thus, plaintiff's RFC is inconsistent with the job requirements of small products assembler II, which requires constant handling.

  Defendant argues the record shows the ALJ "intended to refer to the assembler occupation entailing just frequent handling and fingering…assembler, small products I." D. Mem. at 8. The court agrees.

  The ALJ's confusion about the applicable DOT code likely originated from testimony by the VE at the June 7, 2023 hearing. VE Tolley initially testified a person with plaintiff's RFC could perform both the small products assembler I and small products assembler II positions. AR at 1361. During this testimony, the VE mixed up the DOT codes and erroneously stated the position of small products assembler I corresponds to DOT 739.687-030, when in fact that is the code for small products assembler II. *Id.* When the ALJ pressed the VE to make sure the assembler jobs did not require more than frequent use of the hands, the VE stated one of the assembler jobs required only frequent use of the hands while the other required constant. AR at 1362. The ALJ asked the VE to remove the job requiring constant use of the hands, and the VE then identified the job requiring constant use of the hands as small products assembler II. AR at 1363. The ALJ responded, "Okay. Let's get rid of that." *Id.* Having eliminated the small products assembler II job from consideration, the ALJ then summed up the three jobs remaining that someone with plaintiff's RFC could do, according to the VE's testimony: "the marker, the assembler, small products I, and then the document preparer." AR at 1364. The VE affirmed the ALJ was correct. *Id.* Later in the hearing, the ALJ

confirmed the "assembler small products II job" had been removed from consideration and replaced with that of document preparer. AR at 1367. In short, it is plain from the hearing transcript that in her decision the ALJ intended to find plaintiff could perform the position of small products assembler I, notwithstanding her mistaken use of the DOT code for small products assembler II.

That was not the only error with respect to the assembler position. The VE testified that, after eroding the number of jobs available due to plaintiff's limitations, the total number of jobs available in the national economy for the position of small products assembler I was 3,500. AR at 1361. But in her decision, the ALJ added a zero to the number and so states 35,000 jobs for the position are present in the national economy. AR at 1309. To be clear, this does not reflect further mixup with the small product assembler II job, since the ALJ found there would be 12,000 jobs available in that position. *See id.*

In short, the ALJ's written finding that plaintiff could work as a small products assembler, DOT 739.687-030, is not supported by substantial evidence. But there is substantial evidence that plaintiff could work as a small products assembler I, DOT 706.684-022, for which there were 3,500 jobs available in the national economy. It is also clear the ALJ meant to find plaintiff could perform the small products assembler I job, even though that is not what the written decision says. The court discusses the significance of the ALJ's scrivener's error below.

**Document Preparer**

The ALJ also found plaintiff was capable of performing the work of a document preparer, DOT 249.587-018, with 15,000 jobs in the national economy, based on his RFC. AR at 1309. Plaintiff challenges this finding on the grounds that "the job of document preparer is obsolete" and thus does not exist in significant numbers in the national economy. P. Mem. at 8-11.

According to the DOT, a document preparer for microfilming performs the following tasks:

8

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife.  Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine.  Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT 249.587-018.

Plaintiff argues document preparation for microfilming is essentially an obsolete occupation.  P. Mem. at 8-11.  It does appear that a number of federal courts across the United States have found the position of document preparer has been rendered obsolete. *See e.g., Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 222-23 (E.D.N.Y. 2021) (holding expert opinions concerning the number of document preparer positions available are "subject to wildly irrational variation" and are thus unreliable); *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (remanding for an examination of newer sources of job information to determine whether the document preparer position is now obsolete); *Kelvin W. v. Comm'r Soc. Sec. Admin.*, 2022 WL 847585, *6 n.1 (D. Md. Mar. 21, 2022) (noting the obsolescence of the document preparer position); *Valdez v. Comm'r of Soc. Sec.*, 2023 WL 2636377, at *2 (E.D. Cal. Mar. 24, 2023) (collecting cases which have held document preparer position is obsolete).

1 Defendant offered no argument to contradict plaintiff's assertions, instead
2 contending the court need not consider the issue. D. Mem. at 9, n.5. The court finds
3 plaintiff has adequately called into question whether the VE's testimony about the
4 availability of document preparer positions is accurate. Therefore, the court finds that the
5 VE's testimony alone did not constitute substantial evidence to support the ALJ's finding
6 that plaintiff could find work as a document preparer.

### Marker

Lastly, the ALJ determined plaintiff could work as a marker, DOT 209.587-034, with 65,000 available jobs, based on his RFC. AR at 1308. Plaintiff argues the required job functions of marker, as listed in the DOT, are inherently incompatible with the DOT's assertion that the marker position requires only frequent fingering and handling. P. Mem. at 11-12. Defendant argues plaintiff "fails to establish any conflict between the DOT description for the marker occupation and his RFC." D. Mem. at 8. The court agrees with defendant.

Plaintiff argues that while the DOT states a marker position requires only frequent handling and fingering, the job description makes clear that, in reality, a marker must constantly use their hands throughout the workday. P. Mem. at 11-12. Plaintiff notes "every required job function of a marker as described in the DOT necessitates using one's hands to mark, tie, glue, sew, staple, or press." *Id.* at 11. But in fact, there are several other job functions for markers listed in the DOT that do not require the constant use of one's hands. The DOT notes job responsibilities can include "record[ing] the number and types of articles marked," "compar[ing] printed price tickets with entries on purchase order to verify accuracy and notify[ing] supervisor of discrepancies," and "print[ing] information on tickets, using [a] ticket-printing machine." DOT 209.587-034. These task descriptions do not appear to require significant use of hands. Plaintiff provides no explanation as to why he could not perform these alternative tasks for approximately one-third of the workday.

     Moreover, plaintiff's lay interpretation of what the marker position requires does not persuade the court to disregard either the DOT's determination that the position requires only frequent handling and fingering or the VE's testimony that someone with plaintiff's RFC could perform the job. At the hearing, plaintiff's counsel made the same argument plaintiff's counsel makes here. AR at 1367. In response, the VE confirmed that the DOT states only frequent reaching, handling, and fingering is required for the position, and explained her testimony was based on both the information available to her from SkillTran for how the DOT classifies the positions as well as her own experience. AR at 1368-69.

     Accordingly, the court finds no internal contradiction within the DOT nor any conflict between plaintiff's RFC and the requirements noted in the DOT. The ALJ's finding that plaintiff is able to work as a marker is supported by substantial evidence.

**The ALJ's Errors Were Harmless**

     In general, harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and internal quotation marks omitted); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015).

     Here, although the ALJ erred in concluding there were significant jobs available for plaintiff to work as a document preparer, she did not err in concluding plaintiff could work as a marker. And while her written decision indicating plaintiff could work as a small products assembler II was erroneous, this was plainly a scrivener's error, and there is substantial evidence plaintiff could work as a small products assembler I and the ALJ intended to so state.

     Although the court concludes the ALJ's use of the wrong DOT code was simply a scrivener's error, it was a significant one. This is not a case in which the ALJ, for example, accidentally left out the word "not" and the true intention is clear from the remainder of the decision. *See McKenzie v. Kijakazi*, 2021 WL 4279015, at *15 (E.D. Cal. Sept. 21, 2021) (even inconsistent statements may be excused if the ALJ's intent is

1  "apparent from the record").  It is necessary to look at the hearing transcript to determine
2  the ALJ meant to refer to the small products assembler I position.  Courts may remand an
3  ALJ's decision if it fails to clearly express the ALJ's conclusion as to disability.  *See,*
4  *e.g., De Gonzalez v. Berryhill*, 2017 WL 3224548, at *3 (C.D. Cal. July 28, 2017);
5  *Hernandez v. Saul*, 2021 WL 84397, at *4 (E.D. Cal. Jan. 11, 2021).  Nonetheless,
6  because the ALJ's intention is apparent from the transcript, and because remanding to the
7  ALJ simply to correct this apparent error would be pointless when there is substantial
8  evidence to support the ALJ's intended finding, the court determines this error by the
9  ALJ was harmless.

   Moreover, even if the ALJ's findings with respect to the small products assembler
   and the document preparer positions are both disregarded, the errors would still be
   harmless in light of the ALJ's proper determination that plaintiff could perform the job of
   marker.  The VE testified approximately 65,000 marker positions exist in the national
   economy, even after reducing the number of available positions by half to account for the
   limitations of plaintiff's RFC.  AR at 1361.  The Ninth Circuit has stated that as few as
   25,000 available jobs in the national economy satisfy the requirements of the Social
   Security Act.  *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir.
   2014).  Because an estimated 65,000 marker jobs were available, this alone is sufficient
   to support the ALJ's conclusion that there were jobs existing in significant numbers in the
   national economy that plaintiff could perform.

   Accordingly, because the ALJ's errors at step five were inconsequential to the
   ultimate nondisability determination, they were harmless.

   //
   //

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: March 29, 2025

_____
SHERI PYM
United States Magistrate Judge